IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

    *Plaintiff*,

    v.

STANLEY RINGGOLD,

    *Defendant*.

Criminal No. ELH-17-0232

**MEMORANDUM OPINION**

Stanley Ringgold, through counsel, filed an "Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(C)(1)(A)(i)." ECF 513. The motion is supported by a memorandum. ECF 513-1 (collectively, the "Motion"). The government opposes the Motion. ECF 515. It has submitted multiple exhibits. Defendant has not replied and the time to do so has expired.

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall deny the Motion.

**I. Background**

A grand jury in the District of Maryland returned an indictment against Ringgold and multiple codefendants on June 1, 2016. ECF 20. In a Second Superseding Indictment (ECF 93), Ringgold was charged in Count One with conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin; a substance containing a detectable amount of fentanyl; and 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). ECF 93.

On July 3, 2018, pursuant to a Plea Agreement (ECF 343), defendant entered a plea of guilty to Count One as to conspiracy to distribute one kilogram of heroin. ECF 346. Under Fed.

R. Crim. P. 11(c)(1)(C), the parties agreed to a sentence ranging from 120 months to 144 months of imprisonment. *Id.* ¶ 8.

The Plea Agreement included a stipulation of facts. *Id.* ¶ 6(a). According to the factual stipulation, beginning in at least September 2016, Ringgold conspired with others to obtain and distribute one kilogram or more of heroin at a "street-level drug 'shop.'" *Id.* Law enforcement recorded conversations occurring between the defendant and coconspirators coordinating drug distributions and shop operations. *Id.*

In the Plea Agreement, the parties agreed that defendant qualified as a Career Offender under Section 4B1.1(a) of the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G"). *Id.* ¶ 6(b). And, the offense carried a mandatory minimum term of imprisonment of ten years, with a maximum of life imprisonment. *Id.* ¶ 3(a).

Sentencing was held on September 17, 2018. ECF 405. According to the Presentence Investigation Report ("PSR," ECF 395), defendant was 36 years old. *Id.* at 2. At the time of sentencing, Ringgold reported that he was prescribed medication for high blood pressure. *Id.* ¶ 52.

According to the PSR, the defendant qualified as a Career Offender because of previous felony convictions for attempted murder and possession with intent to distribute. *Id.* ¶ 29. Consistent with the Plea Agreement (ECF 343, ¶ 6(c)), the PSR reflected a final offense level of 34 and a Criminal History Category of VI. ECF 395, ¶¶ 20, 29.

Based on a final offense level of 34 and a Criminal History Category of VI, *id.* ¶¶ 20, 29, Ringgold's advisory sentencing Guidelines called for a sentence ranging between 262 months and 327 months of imprisonment. *Id.* ¶ 63. However, as noted, the "C Plea" called for a sentence ranging from 120 months to 144 months. The Court imposed a sentence of 120 months' imprisonment, with credit for time served in federal custody from July 28, 2017. ECF 406.

2

Ringgold, who is now 38 years of age, is serving his sentence at Edgefield FCI. He has served about 42 months of his sentence, or roughly 35%. According to the BOP, he has a projected release date of March 29, 2026. *Inmate Locator*, https://www.bop.gov/inmateloc/index.jsp (last accessed Feb. 5, 2021).

Defendant continues to suffer from high blood pressure. ECF 515-2 (Medical Records). He also has asthma and a host of other health conditions, including sleep apnea, gastro-esophegeal efflux, and gingivitis. ECF 513-1 at 2; ECF 515-2.

Ringgold contends that the Warden denied his request for compassionate release on August 7, 2020. ECF 513-1 at 2. The government claims that there is no record of the Warden's denial. ECF 515 at 2; ECF 515-1.

## II.  Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019).  But, "the rule of finality is subject to a few narrow exceptions."  *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One such exception is when the modification is "expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence.  Section 3582 was adopted as part of the Sentencing Reform Act of 1984.  It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP.  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief.  *See*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v.*

*Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished.  The BOP rarely filed motions on an inmate's behalf.  As a result, compassionate release was exceedingly rare.  *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA").  *See* Pub. L. 115-391, 132 Stat. 5239 (2018); *see United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020).  As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.  So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.  *McCoy*, 981 F.3d at 276.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

(i) extraordinary and compelling reasons warrant such a reduction;

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the

4

safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with applicable policy statements issued by the Sentencing Commission.

Notably, "Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." *McCoy*, 981 F.3d at 276. But, in U.S.S.G. § 1B1.13, titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement," the Sentencing Commission addressed the "extraordinary and compelling reasons" that might warrant compassionate release. *See McCoy*, 981 F.3d at 276. The Sentencing Commission acted pursuant to 28 U.S.C. § 994(t), as well as § 994(a)(2)(C). *McCoy*, 981 F.3d at 276. However, as the *McCoy* Court observed, the policy statement was issued in 2006 and was last updated in November 2018, prior to the enactment of the First Step Act in December 2018. *Id.*

In particular, U.S.S.G. § 1B1.13 provides that, on motion by the Director of the BOP, the court may reduce a sentence where warranted by extraordinary or compelling reasons (§ 1B1.13(1)(A)); the defendant is at least 70 years old and has served at least 30 years in prison (§ 1B1.13(1)(B)); the defendant is not a danger to the safety of any other person or to the community (§ 1B1.13(2)); and the reduction is consistent with the policy statement. U.S.S.G. § 1B1.13(3).

The Application Notes to U.S.S.G. § 1B1.13 indicate that compassionate release may be based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons."   U.S.S.G. § 1B1.13 App. Notes 1(A)-(D). Application Note 1 to

5

U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows:

> 1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A)   **Medical Condition of the Defendant**.—
>
> > (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> >
> > (ii) The defendant is—
> >
> > > (I)  suffering from a serious physical or medical condition,
> > >
> > > (II) suffering from a serious functional or cognitive impairment, or
> > >
> > > (III) experiencing deteriorating physical or mental health because of the aging process,
> >
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Application Note 1(B) provides that age is an extraordinary and compelling reason where the defendant is at least 65 years of age, has serious physical or mental health issues, and has served at least 10 years in prison or 75% of the sentence.  Application Note 1(C) concerns Family Circumstances.  Application Note 1(D), titled "**Other Reasons**," permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  U.S.S.G. § 1B1.13 App. Note 1(D).  This is the "so-called, 'catch-all' category." *McCoy*, 981 F.3d at 276.

The  BOP  regulation  appears  at  Program  Statement  5050.50,  Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205.

However, the Court may not rely on the Program Statement.  Rather, the Court must consider the Sentencing Commission's policy statements.  *United States v. Taylor*, 820 F. App'x 229, 229-30 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").

As noted, "[w]hen deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'"  *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").  However, as indicated, the policy statement in § 1B1.13 of the Guidelines was last updated in November 2018, before the enactment of the First Step Act.  Thus, it is only "directed at BOP requests for sentence reductions."  *McCoy*, 981 F.3d at 276 (citing U.S.S.G. § 1B1.13).  In other words, "[b]y its plain terms…§ 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)."  *Id.* at *7; *see also United States v. Zullo,* 976 F.3d 228, 230 (2nd Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1108-12 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020).

Accordingly, "[a]s of now, there is no Sentencing Commission policy statement 'applicable' to [] defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction."  *McCoy*, 981 F.3d at 283.  Therefore, district courts are "'empowered…to consider any extraordinary and compelling reason for release that a defendant might raise.'"  *McCoy*, 981 F.3d at 284 (quoting *Zullo*, 976 F.3d at 230).

Nevertheless, as the movant, the defendant bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582.  *See, e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020).  If the defendant can show an extraordinary and compelling reason that renders him eligible for a sentence reduction, the Court must then consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *Dillon*, 560 U.S. at 826-27; *see also United States v. Trotman*, 829 Fed. App'x 607, 608-9 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A), the court must consider the sentencing factors under 18 U.S.C. § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020).  But, compassionate release is a "rare" remedy.  *Chambliss*, 948 F.3d at 693-94; *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

### III.  COVID-19[1]

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years."  *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, 461 F. Supp. 3d 214, 223 (D. Md. 2020). That crisis is COVID-19.[2]  The World Health

---

[1] The Court may take judicial notice of matters of public record.  *See* Fed. R. Evid. 201.

[2] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19.  *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW  (last accessed June 15, 2020).

Organization declared COVID-19 a global pandemic on March 11, 2020.  *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

The judges of this Court "have written extensively about the pandemic."  *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic.  *Id.*

That said, the COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918.  *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration.").  Although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories . . . ."  *Antietam Battlefield KOA*, 461 F. Supp. 3d at 223 (citation omitted). And, the pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it."  *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, 818 Fed. App'x 393 (6th Cir. 2020).  Indeed, for a significant period of time, life as we have known it came to a halt. Although many businesses and schools reopened for a period of time, many are again subject to closure or substantial restrictions, due to the virulent resurgence of the virus in recent weeks.

The Court must also underscore that the virus is highly contagious.  *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh.  As of January 31, 2021, COVID-19 has infected more than 26.1 million Americans and caused over 440,000 deaths in this country.  *See*

*COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Jan. 31, 2021).

Unfortunately, there is currently no cure or proven treatment that is generally available for the virus.  But, the country has recently seen the rollout of two vaccines for COVID-19 (Pfizer and Moderna). The vaccines have primarily been made available to health care workers and the elderly in nursing homes, but recently the criteria for eligibility has expanded. That said, the rollout has not been as expeditious as had been hoped.

Notably, the BOP published "COVID-19 Vaccine Guidance" on January 4, 2021 (version 7.0). *COVID-19 Vaccine Guidance*, Federal Bureau of Prisons Clinical Guidance (Jan. 4, 2021), https://www.bop.gov/resources/pdfs/2021_covid19_vaccine.pdf. Administration of the COVID-19 vaccine (Pfizer and Moderna) will "align with [recommendations of] the Centers for Disease Control and Prevention." *Id.* at 4. Therefore, once the BOP receives the vaccine, a prisoner at heightened risk will receive priority for receipt of the vaccine. *Id.* at 6.

The BOP reportedly received its first shipment of vaccines on December 16, 2020. Walter Pavlo, F*ederal Bureau of Prisons Starts Vaccination of Staff, Inmates Soon Thereafter*, Forbes (Dec. 21, 2020), https://www.forbes.com/sites/walterpavlo/2020/12/21/ federal-bureau-of-prisons-starts-vaccination-of-staff-inmates-soon-thereafter/?sh=5683b99aa96f. As of February 1, 2021, the BOP reported that it has administered 31,149 doses of the vaccine. *See* https://www.bop.gov/coronavirus/ (last accessed Feb. 1, 2021).

Of relevance here, the Centers for Disease Control and Prevention ("CDC") has identified certain risk factors that increase the chance of severe illness.  Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.  *See Coronavirus Disease 2019*

*(COVID-19), People Who Are at Risk for Severe Illness*, C̲TRS̲. F̲OR̲ D̲ISEASE̲ C̲ONTROL̲ & P̲REVENTION̲ (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020, and again on July 17, 2020, the CDC revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. Then, on November 2, 2020, to reflect the most recently available data, the CDC again revised its guidance. *See People of Any Age with Underlying Medical Conditions*, C̲TRS̲. F̲OR̲ D̲ISEASE̲ C̲ONTROL̲ & P̲REVENTION̲ (Nov. 2, 2020), https://bit.ly/38S4NfY. According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; smoking; pregnancy; and Type 2 diabetes. *Id.* The CDC has also indicated that the risk for severe illness from COVID-19 increases with age, with older adults at highest risk. *See Older Adults At Greater Risk of Requiring Hospitalization or Dying if Diagnosed with COVID-19*, C̲TRS̲. F̲OR̲ D̲ISEASE̲ C̲ONTROL̲ & P̲REVENTION̲ (Nov. 27, 2020), https://bit.ly/3g1USZ1.

In addition, the CDC created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include asthma, cerebrovascular disease, hypertension, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, overweight (where the BMI is between 25 and 30), pulmonary fibrosis, thalassemia (a type of blood disorder), and Type 1 diabetes. *See id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, C̲TRS̲. F̲OR̲ D̲ISEASE̲ C̲ONTROL̲ & P̲REVENTION̲, https://bit.ly/3dPA8Ba (last accessed December 9, 2020). Social distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at *2.

Prisoners have little ability to isolate themselves from the threat posed by the coronavirus. *Id.*; *see Cameron*, 2020 WL 2569868, at *1; *see also United States v. Mel*, TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("In light of the shared facilities, the difficulty of social distancing, and challenges relating to maintaining sanitation, the risk of infection and the spread of infection within prisons and detention facilities is particularly high."). Prisoners are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers, nor are they necessarily able to separate themselves from others. Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493, 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19. The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

Former Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9. Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at *2. Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected. Indeed, as the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

As with the country as a whole, the virus persists in penal institutions.[3] As of January 31, 2021, the BOP had 123,221 federal inmates and 36,000 staff. And, as of the same date, the BOP

---

[3] The *New York Times* reported in June 2020 that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country. Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. Times (June 18, 2020), https://nyti.ms/37JZgH2. More recently, on October 29, 2020, the *New York Times* reported that, "[i]n American jails and prisons, more than 252,000 people have been infected and at least 1,450 inmates and correctional officers have died" from COVID-19. *See Cases in Jails and Prisons*,

reported that 3,117 inmates and 1,782 BOP staff currently tested positive for COVID-19; 42,671 inmates and 4,321 staff have recovered from the virus; and 210 inmates and three staff members have died from the virus.  Moreover, the BOP has completed 101,224 COVID-19 tests.  *See* https://www.bop.gov/coronavirus/ (last accessed Jan. 31, 2021).  *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1.

At Edgefield FCI, where the defendant is a prisoner, as of February 1, 2021, the BOP reported that 21 inmates and 23 staff have tested positive for COVID-19 and 202 inmates and ten staff have recovered at the facility. There have been two reported inmate deaths. And, no one at this institution has received the vaccine. *See* https://www.bop.gov/coronavirus/ (last accessed Feb. 1, 2021).

## IV.  Discussion

Ringgold has moved for compassionate release on the ground that his health conditions render him particularly vulnerable to COVID-19.  *See* ECF 513-1 at 3-4. In particular, defendant suffers from hypertension and asthma. *Id.*; ECF 515-2 at 5, 10. Moreover, defendant contends that he is not a danger to the community and that the factors under 18 U.S.C. § 3553(a) favor his release. *Id.* at 5-6.

The government opposes defendant's Motion at each step of the analysis. The government first contends that defendant has not established that he has exhausted his administrative remedies.

---

N.Y. TIMES (Oct. 29, 2020), https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html.

On November 21, 2020, the *New York Times* reported that "U.S. correctional facilities are experiencing record spikes in coronavirus infections this fall. During the week of Nov. 17, there were 13,657 new coronavirus infections reported across the state and federal prison systems.*" America Is Letting the Coronavirus Rage Through Prisons*, N.Y. TIMES (Nov. 21, 2020), https://www.nytimes.com/2020/11/21/opinion/sunday/coronavirus-prisons-jails.html.

ECF 515 at 2. Moreover, according to the government, defendant has not established an enhanced risk of severe symptoms to make him eligible for release. *Id.* at 17. And, in any event, the government maintains that Ringgold remains a danger to the community and the § 3553(a) factors militate against reducing his sentence. *Id.* at 19-23.

Indeed, as the government notes, the defendant has not provided any evidence that he has exhausted his administrative remedies with respect to his request for compassionate release, as required by 18 U.S.C. § 3582(c). And, the government has produced an email from BOP counsel claiming that there is no record of the Warden's denial of defendant's request.  *See* ECF 515-1 (Email from BOP counsel).

Because Ringgold has failed to demonstrate that he exhausted his administrative remedies, I need not address whether he provided an extraordinary and compelling reason for compassionate release or the relevant factors under 18 U.S.C. §§ 3553(a) and 3142(g). Nevertheless, I note that at this time a reduction of Ringgold's sentence to time-served would be inconsistent with those factors.

Ringgold has an extensive criminal history involving violence and drugs. In 2000, when he was 17 years of age, the defendant was charged with attempted second degree murder involving two victims. ECF 395, ¶¶ 23, 24. Both victims were shot. The defendant was sentenced to 18 years' imprisonment, with all but five years suspended. *Id.* He was released in 2003. *Id.* In 2004, one year after being released, defendant was convicted of possession with intent to distribute controlled dangerous substances and sentenced to one month in prison. *Id.* ¶ 25. But, that conviction constituted a violation of probation in regard to the offenses in paragraphs 23 and 24, for which he received a sentence of five years' imprisonment. *Id.* He was released in July 2008. *Id.* Thereafter, in 2012, defendant was convicted of possession with intent to distribute cocaine. *Id.* ¶ 26. He was

sentenced to seven years with all but time served (two days) suspended. *Id.*

Moreover, Ringgold has only served about 35% of his current sentence. And, that sentence was significantly below the Guidelines range that applied at the time and at the bottom of the C Plea range. More significant, it corresponded to the mandatory minimum sentence applicable to the offense.

To be sure, in light of *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019), defendant no longer qualifies as a Career Offender because a drug conspiracy offense under 18 U.S.C. § 846 is no longer a qualifying predicate for career offender purposes. If the defendant were not a Career Offender, he would have had a final offense level of 27 and a Criminal History Category of III. But, in view of the mandatory minimum, his Guidelines of 87-108 months would have been adjusted to 120 months. *See* U.S.S.G. § 5G1.1(c)(2).[4]

Accordingly, the Court concludes that release under 18 U.S.C. § 3582(c)(1)(A) is not warranted at this time.

### V.  Conclusion

For the foregoing reasons, I shall deny the Motion, without prejudice.

An Order follows, consistent with this Memorandum Opinion.


Date:   February 5, 2021                                     /s/
                                                    Ellen Lipton Hollander
                                                    United States District Judge

---

[4] The parties have not addressed *Norman*.