IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.                                                    Criminal No. ELH-17-232

STANLEY RINGGOLD,
*Defendant*.

**MEMORANDUM OPINION**

Approximately one year ago, on November 8, 2023, the Court issued a lengthy Memorandum Opinion (ECF 604) and Order (ECF 605), denying the "Motion for Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. § 3582(C)(1)(A) and the First Step Act of 2018" (ECF 565) filed by defendant Stanley Ringgold. That was defendant's second compassionate release motion. Now pending is defendant's motion asking the Court "to reconsider its denial of 18 U.S.C. [§] 3582(c)(1)(A)." ECF 609. The request is supported by exhibits. Defendant has also filed correspondence docketed at ECF 617. I shall consider the submissions (ECF 609, ECF 617) collectively as the "Motion" or the "Third Motion".

The Office of the Federal Public Defender ("FPD") has declined to represent defendant as to the Third Motion. ECF 618. The government opposes the Third Motion. ECF 630. Defendant has replied. ECF 639.

No hearing is necessary to resolve the Third Motion. For the reasons that follow, I shall deny the Motion.

**I.        Background**

On August 1, 2017, a grand jury in the District of Maryland returned a seven-count Second Superseding Indictment. ECF 93. Ringgold and ten co-conspirators were charged in Count One

with conspiracy to distribute and possess with intent to distribute controlled dangerous substances, in violation of 21 U.S.C. § 846. *Id.*

Ringgold entered a plea of guilty on July 3, 2018, to the offense of conspiracy to distribute and possess with the intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846. ECF 346. The plea was tendered pursuant to a Plea Agreement. ECF 343. The offense carries a mandatory minimum sentence of ten years of imprisonment. *Id.* ¶ 3(a). And, pursuant to Fed. R. Crim. P. 11(c)(1)(C) ("C Plea"), the parties agreed to a sentence ranging between 120 months and 144 months of imprisonment, *i.e.*, ten to twelve years. ECF 343, ¶ 8.

In the Plea Agreement, the parties stipulated to the following facts, ECF 343, ¶ 6(a):

> Beginning at a time unknown, but at least as early as September 2016, the Defendant, Stanley Ringgold, conspired with others to obtain and distribute one kilogram or more of heroin at a street-level drug "shop" in the area of Boarman Avenue and Reisterstown Road in Baltimore City, Maryland. During the period of the conspiracy the Drug Enforcement Administration (DEA) obtained authority to intercept the communications of the DeAngelo Keith [sic] ("Keith"), and confirmed that the Defendant was a member of an organization selling heroin in Baltimore. While intercepting Keith's cellular telephone, investigators heard Keith coordinate shop operations with other members of his organization, which included the Defendant. For example on January 10, 2017, there was a call between Keith and the Defendant where Keith called the Defendant to check on heroin that Ringgold was manufacturing. The Defendant and Keith specifically discussed letting the heroin dry and how it should be mixed: Keith said, "Five. You fucked this brown up." The Defendant responded, "Nah, that's supposed to be like that. I checked on it, that's supposed to be like. That's how I want it." Keith replied, "Man, that shits fucked up. You crazy as shit, man." The Defendant answered, "No its not fucked up, it's wet, yo. The fuck you mean. It ain't fucked up. It's just wet. It's gotta dry. Just let it sit, son. Leave it alone." Keith stated, "Nah. It ain't gonna dry. It's gonna be like . . . ." The Defendant replied, "We got plans for that." Keith said, "It's stained." The Defendant stated, "I got plans for that. No it's just supposed to sit. The longer it's going to sit it's going to be alright. Because I don't even think I need it. For real."

The parties also stipulated that "[t]he Government's evidence consists of the seizure of narcotics and narcotics paraphernalia and the recording of conversations occurring over the Defendant's and others' cellular telephones." *Id.* And, Ringgold "agree[d] that it was reasonably

foreseeable to him that members of the conspiracy would distribute one kilogram or more of heroin." *Id.*

At the time of the guilty plea, the parties agreed that Ringgold qualified as a career offender pursuant to § 4B1.1(a) of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). ECF 343, ¶ 6(b); *see also* ECF 395 ("Presentence Report" or "PSR"), ¶ 3. Moreover, "the parties agree[d] that the Defendant's offense level is 37 and the Defendant's criminal history category is VI." ECF 343, ¶ 6(b). After deductions for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, the parties further agreed that Ringgold's "final adjusted offense level is 34." *Id.* ¶ 6(c).

The PSR indicated that in 2000 Ringgold was convicted in the Circuit Court for Baltimore City on two charges of attempted murder in the second degree, for which he received an 18-year sentence, with all but five years suspended. ECF 395, ¶¶ 23, 24. He was also convicted of a handgun offense, for which he was sentenced to a concurrent term of five years. *Id.* ¶ 24. Ringgold was released on March 18, 2003, but was found in violation of the terms of his release on December 10, 2004, and he was returned to prison. *Id.* ¶ 24. Ringgold was again released on July 16, 2008, but on December 2, 2008, he was again found in violation of the terms of his probation. *Id.* Ringgold's case expired on December 18, 2009. *Id.*

In addition, the PSR indicated that on two separate occasions Ringgold was convicted in the Circuit Court for Baltimore City of a felony drug offense. *Id.* ¶¶ 25, 26. In particular, Ringgold was convicted in 2003 of "Possess[ion] with Intent to Distribute," and he was convicted in 2011 of "Possession with Intent to Distribute Cocaine." *Id.* ¶¶ 25, 26. For the 2003 offense, he appears to have received a time-served sentence. *Id.* ¶ 25. For the 2011 offense, Ringgold received a seven-year sentence, with all but two days suspended. *Id.* ¶ 26.

According to the PSR, Ringgold had a base offense level of 30. *Id.* ¶ 16. However, because he qualified as a career offender, his offense level was increased to 37, pursuant to U.S.S.G. § 4B1.1. *Id.* ¶ 17. After three deductions for acceptance of responsibility under U.S.S.G. § 3E1.1, the PSR reflects that Ringgold's final offense level was 34. *Id.* ¶¶ 18, 19.

Ringgold's prior convictions resulted in a criminal history score of five points. *Id.* ¶ 27. Under the Guidelines, "a criminal history score of five establishes a criminal history category of III." *Id.* ¶ 28. However, because Ringgold was deemed a career offender, his criminal history category was elevated to VI, pursuant to U.S.S.G. § 4B1.1(b). *Id.* ¶ 29.

Based upon a final offense level of 34 and a criminal history category of VI, the PSR determined that Ringgold's Guidelines called for a sentence ranging from 262 months to 327 months of imprisonment. ECF 395, ¶ 63. In contrast, if defendant had not been a career offender, he would have had a final offense level of 27 and a Criminal History Category of III. In that circumstance, the Guidelines range would have been 87 to 108 months of imprisonment.

However, under U.S.S.G. § 5G1.1(b), "the statutorily required minimum sentence shall be the guideline sentence." As noted, the offense carried a mandatory minimum sentence of at least ten years of imprisonment. Therefore, even if defendant were not a career offender, the Guidelines range would have been adjusted to 120 months of imprisonment, to correspond to the mandatory minimum term of ten years of imprisonment.

Sentencing was held on September 17, 2018. ECF 405. Ringgold was 36 years old at the time. ECF 395 at 2. As noted, the C Plea called for a sentence of imprisonment ranging from ten to twelve years. The Court imposed a sentence of ten years of imprisonment, with credit dating from July 28, 2017. ECF 406 at 2. This corresponded to the bottom of the C Plea range and to the mandatory minimum sentence. *See* ECF 395, ¶ 62. In other words, given the congressionally

mandated minimum term of imprisonment, defendant received the lowest possible sentence that the Court could impose.  ECF 343, ¶ 3(a).

On November 9, 2020, through counsel, Ringgold filed an "Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(C)(1)(A)(i)."  ECF 513; ECF 513-1 (collectively, "First Motion").  In the First Motion, Ringgold asked the Court to reduce his sentence to time served because his "sleep apnea, hypertension, hyperlipidemia, Gastro-esophageal reflux disease without esophagitis, asthma, impingement syndrome of the shoulder and gingivitis . . . place[d] him at serious risk of becoming severely ill from COVID-19."  ECF 513-1 at 1.

By Memorandum Opinion and Order of February 7, 2021, I denied the First Motion, without prejudice, on the ground that Ringgold had not exhausted his administrative remedies, as required by 18 U.S.C. § 3582(c)(1)(A).  ECF 535 at 15; ECF 536.  However, I noted that, even assuming that Ringgold exhausted his administrative remedies, the sentencing factors under 18 U.S.C. § 3553(a) would have counseled against compassionate release, given defendant's "extensive criminal history involving violence and drugs," ECF 535 at 15, and the fact that he had served only 35 percent of his sentence, and, the sentence itself was a lenient one, as it "was significantly below the Guidelines range . . . at the bottom of the C Plea range [and] corresponded to the mandatory minimum sentence applicable to the offense."  *Id.* at 16.

On September 17, 2021, Ringgold filed a motion requesting the appointment of counsel to assist him in pursuing compassionate release.  ECF 547.  The Court then asked the FPD to review the matter.  ECF 553.  The FPD filed a notice on November 11, 2021, stating that it did "not plan to file a motion for compassionate release on Mr. Ringgold's behalf."  ECF 557.

On September 30, 2022, Ringgold, again pro se, filed another compassionate release motion.  ECF 565 ("Second Motion").  He asked the Court to allow him "to finish out his sentence

at home" in light, *inter alia*, of "the extraordinary and compelling circumstances created by the novel coronavirus." *Id.* at 1. Again, the FPD declined to represent the defendant. ECF 557.

The government opposed the Second Motion. ECF 573. It appended some ninety pages of Ringgold's medical records to its Opposition.

At that time, Ringgold was incarcerated at the Federal Correctional Institution, Beckley. ECF 604 at 6. And, as of that time, he had served about 75 months, or 63 percent, of his 120-month sentence. *See* ECF 406 at 2.

By Memorandum Opinion (ECF 604) and Order (ECF 605) of November 8, 2023, I denied the Second Motion. Soon after, defendant moved for reconsideration. ECF 609. It is that Motion that is now pending.

Since the filing of the Third Motion, defendant has been released to a residential reentry facility. He has a projected release date of February 25, 2025. *See* https://www.bop.gov/inmateloc/

In the Third Motion, defendant asserts, *inter alia*, that his "on-going medical conditions and the conditions of the Federal Bureau of Prisons" warrant his release, "even after review of the 18 U.S.C. [§] 3553(a) sentencing factors." ECF 609 at 1. Defendant also suggests that the medical records provided earlier by the government are not accurate, *id.* at 4, and he intimates that there are many cases of COVID-19 at Beckley. *Id.* at 5, 7, 9. He also posits that he was "not the leader in his conspiracy" and was just "trying to make a dollar to support himself and his family . . . ." *Id.* at 1.

Moreover, defendant notes that he has "not been in any trouble in 5 year[s] . . . ." ECF 617 at 1.[1]  Further, he points out that he has "done programs to earn time to get home to [his] family early."  *Id.*  For example, he notes that he has participated in "R-Dap," *i.e.*, the Residential Drug Abuse Program.  ECF 639.  He also claims that he is non-violent, and his mother is sick and needs her son.  *Id.*

### Discussion

In ECF 604, I set forth at length the applicable legal principles.  I also carefully reviewed the impact of COVID-19 on federal prisoners.  In addition, I reviewed the underlying facts and defendant's contentions.  To the extent relevant, and in the interest of judicial efficiency, I incorporate ECF 604 here.

Notably, I have twice recognized that Ringgold, if sentenced today, would no longer qualify as a career offender.  ECF 535 at 16; ECF 604 at 25.  Nevertheless, the law then – as now – requires a mandatory minimum term of imprisonment of at least ten years.  And, defendant received the lowest possible sentence that the Court, by law, could impose.  *See* 21 U.S.C. §§ 846, 841(b)(1)(A); ECF 343, ¶ 3(a).

To defendant's credit, he has participated in the RDAP program.  This may have been a factor in the release to a residential reentry program.

I applaud defendant's progress.  But, I see no basis to alter my ruling that defendant has not identified an extraordinary and compelling reason that warrants compassionate release.  Nor do I see a basis to alter my conclusion that the factors under 18 U.S.C. § 3553(a) counsel against a reduction in defendant's sentence or a time-served sentence.

---

[1]  On February 27, 2020, defendant was found to have used drugs/alcohol and also committed an assault without serious injury.  *See* ECF 630-3.

**Conclusion**

For the reasons stated previously, and for the reasons set forth above, I shall deny the Third

Motion.  An Order follows.


Date:   November 21, 2024                                    _____/s/_____

                                                            Ellen L. Hollander
                                                            United States Senior District Judge